UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MICHAEL MATHIE, IV,

                        Plaintiff,

- v -                                       Civ. No. 9:05-CV-848
                                                             (DNH/RFT)

GLENN S. GOORD, Commissioner, EDWARD J.
MCSWEENY, Assistant Commissioner/Executive
Assistant, THOMAS G. EAGEN, Director, Inmate
Grievance Program, Central Office Review Committee,
and NEW YORK STATE DEPARTMENT OF
CORRECTIONAL SERVICES,[1]

                        Defendants.

**APPEARANCES:**                                      **OF COUNSEL:**

MICHAEL MATHIE, IV
Plaintiff, *Pro Se*
90-T-1282
Clinton Correctional Facility
P.O. Box 2000
Dannemora, NY 12929

HON. ELIOT SPITZER                          DAVID L. COCHRAN, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

    *Pro se* Plaintiff Michael Mathie, IV, brings a civil action pursuant to 42 U.S.C. § 1983, alleging that the Department of Correctional Services ("DOCS") regulation that does not allow for

---

[1] Only Defendants Goord, McSweeny, and Eagen have been served.

independent urinalysis testing violates the Due Process and Equal Protection Clauses under the Fourteenth Amendment. Dkt. No. 2, Am. Compl. at ¶¶ 11-15 & 19. Defendants Glenn Goord, Commissioner, Edward J. McSweeny, Assistant Commissioner/Executive Assistant, and Thomas G. Eagen, Director, Inmate Grievance Program, Central Office Review Committee, file this Motion to Dismiss. Dkt. No. 17. Plaintiff opposes the Motion. Dkt. No. 24. For the reasons to follow, it is recommended that the Motion to Dismiss be **granted**.

## I. FACTS

The following facts are derived from the Amended Complaint, which on a motion to dismiss, must be taken as true. On December 31, 2004, Plaintiff filed a grievance stating that DOCS Directive 4937[2] denied him his constitutional rights under the Due Process and Equal Protection clauses. Am. Compl. at ¶ 16. On January 13, 2005, Plaintiff had a hearing on the grievance in front of the Inmate Grievance Review Committee ("IGRC"). *Id.* at ¶ 17.[3] The IGRC was split in its decision so Plaintiff's grievance was forwarded to the Superintendent. *Id.* On January 25, 2005, the Superintendent denied the grievance stating that "there is no provision to preserve a urinalysis sample until the conclusion of a Superintendent's Hearing. Should an inmate receive a misbehavior report in connection with a urinalysis refusal or a positive urinalysis test, he will be afforded due process through the disciplinary mechanism and appeal process[.]" *Id.* at ¶ 17.[4] Then, on March 2, 2005, Defendant Eagen affirmed the Superintendent's decision based upon the reasons stated by the Superintendent. *Id.* at ¶ 18.

---

[2] This directive can be found in N.Y. COMP. CODES R. & REGS. tit. 7, § 1020.4.

[3] Plaintiff inadvertently created two paragraphs numbered 17. The Court's reference to paragraph 17 for this statement is in reference to the first paragraph numbered 17.

[4] This statement is in reference to the second paragraph numbered 17.

On April 8, 2005, Plaintiff wrote a letter to Defendant Goord complaining that when an inmate, such as himself, is accused of drug use, such inmate cannot obtain independent test results on the urinalysis, even at the inmate's own expense, especially when the urine sample is "destroyed" by DOCS officials. *Id.* at ¶ 20. Defendant Goord referred Plaintiff's letter to Defendant McSweeny who, in turn, responded to Plaintiff. *Id.* at ¶ 21. Defendant McSweeny responded that the Central Office Review Committee ("CORC") was the final step in the review process and that there were no provisions in DOCS directive 4040 for any further appeals. *Id.* On April 13, 2005, Plaintiff filed a notice of intention to sue with the New York State Attorney General's Office. *Id.* at ¶ 22.

## II. DISCUSSION

### A. Motion to Dismiss Standard

Upon a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), a court may dismiss a complaint "only if 'it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Equal Employment Opportunity Comm'n v. Staten Island Sav. Bank*, 207 F.3d 144, 148 (2d Cir. 2000) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) & citing *Drake v. Delta Air Lines, Inc.*, 147 F.3d 169, 171 (2d Cir. 1998)); *see also Green v. New York State Dep't of Corr. Serv. et al*, 2003 WL 22169779, at *1 (N.D.N.Y. Aug. 27, 2003). Furthermore, "the court must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999); *see also Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (citations omitted). However, the court need not credit conclusory statements unsupported by assertions of facts or legal conclusions and characterizations presented as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Nevertheless, "[i]n assessing the legal sufficiency of a

claim [under 12(b)(6)], the court may consider those facts alleged in the complaint, documents attached as an exhibit thereto or incorporated by reference . . . and documents that are integral to plaintiff's claims, even if not explicitly incorporated by reference." *Green*, 2003 WL 22169779, at *1 (internal quotation marks and citations omitted) (alterations in original).

Moreover, pleadings submitted by *pro se* litigants "should be 'construed liberally,'" and a complaint "should not be dismissed unless 'it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations.'" *Phillips v. Girdich*, 408 F.3d 124, 127 (2d Cir. 2005) (internal citations omitted). A "dismissal on the pleadings is *never* warranted unless the plaintiff's allegations are doomed to fail under any available legal theory." *Id.* at 128.

### B. Fourteenth Amendment Claims

**1. Due Process Claim**

Plaintiff claims that DOCS directive 4937 regarding urinalysis testing violates the Due Process Clause of the Fourteenth Amendment. Am. Compl. at ¶ 26.

The Due Process Clause of the Fourteenth Amendment states that no "State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. It is well-established that a prisoner who has been lawfully incarcerated will only have "a narrow range of protected liberty interests." *Morris v. Dann*, 1996 WL 732559, at *3 (N.D.N.Y. Dec. 11, 1996). Thus, the Due Process Clause of the Fourteenth Amendment will protect against restraints or conditions of confinement that "exceed[] the sentence in . . . an unexpected manner[.]" *Sandin v. Conner*, 515 U.S. 472, 484. Therefore, in order to succeed on a § 1983 claim based on the Fourteenth Amendment, the prisoner would have to prove "a deprivation of a liberty interest

protected by the Due Process Clause itself, or a violation of a state-created liberty interest." *Morris*, 1996 WL 732559, at *3.

For a prisoner to survive a motion to dismiss on a Due Process claim, the prisoner must allege that: 1) "the State has granted inmates, by regulation or statute, a protected liberty interest with respect to the terms or conditions of confinement; and 2) the defendants' action creates an 'atypical and significant hardship' with regard to those terms or conditions of confinement." *Shariff v. Artuz*, 2000 WL 1219381, at *6 (S.D.N.Y. Aug. 28, 2000) (citing *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996) & quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

Here, Plaintiff challenges the urinalysis procedures set forth in N.Y. COMP. CODES R. & REGS. tit. 7, § 1020.4. Plaintiff directs the Court to a specific section of the regulation, namely, N.Y. COMP. CODES R. & REGS. tit. 7, § 1020.4(e). Dkt. No. 24, Pl.'s Mem. of Law, Ex. E, Directive 4937. This section of the Directive involves the processing of the urine specimen and states:

> (1) If the facility has urinalysis testing apparatus:
> (I) All persons handling the specimen shall make an appropriate notation under *Chain of Custody* on the request for urinalysis test form. The number of persons handling the specimen shall be kept to the minimum. The specimen shall be kept in a secure area at all times.
> (ii) Place the specimen in a secured refrigerator if it is not to be tested immediately. If it is anticipated that the specimen will not be tested within one day, place it in a secured freezer. It is recommended that the specimen be stored frozen. A log book shall be kept in the vicinity of the refrigerator/freezer, and each person accessing the specimens shall note his name, the date, and the time of each such access.
> (iii) The individual performing the urinalysis testing shall have been appropriately trained in the use of the testing apparatus and shall precisely follow procedures recommended by the manufacturer for the operation of the testing apparatus.
> (iv) If a positive result is obtained on the first test, the procedure followed and the results obtained shall be noted on the urinalysis procedure form. A second test shall be performed on the same sample after new positive and negative control tests have been run. The results of the second test shall be noted on a second urinalysis procedure form. If a positive result is obtained from the second test, the individual performing the urinalysis testing shall cause a misbehavior report to be issued. The inmate's copy of the misbehavior report shall be accompanied by the request for the urinalysis test form, the urinalysis procedure form,

the printed documents produced by the urinalysis testing apparatus for the positive tests and a statement of the scientific principles and validity of the testing apparatus.
(v) If a negative test result is obtained on the second test, the specimen shall be considered negative and no misbehavior report shall be written.
(2) If the facility does not have its own urinalysis testing apparatus, the specimen may be forwarded to an independent laboratory or to another facility that has urinalysis testing apparatus.
(I) Place the specimen in a secured refrigerator/freezer if it is not to be forwarded immediately. All persons handling the specimen shall make an appropriate notation on the request for urinalysis test form. The number of persons handling the specimen shall be kept to a minimum. A log book shall be kept in the vicinity of the refrigerator/freezer, and each person accessing the specimens shall note his name, the date, and the time of such access.
(ii) Forward the specimen in accordance with procedures recommended by the testing laboratory or facility.
(iii) If a positive result is obtained, a misbehavior report shall be written. The (inmate's copy of the) misbehavior report shall be accompanied by the request for urinalysis test form, the test report from the laboratory or facility, a copy of the methods and procedures used by the testing laboratory or facility, and a statement of the scientific principles and validity of the testing apparatus used by the laboratory or facility.
N.Y. COMP. CODES R. & REGS. tit. 7, § 1020.4(e).

Plaintiff states that his due process rights were violated because he was not allowed to independently test the urine sample, notwithstanding the dual tests set forth above, thus causing a presumption of guilt when the tests come back positive. Am. Compl. at ¶ 19.[5] Plaintiff has not stated how this regulation creates a liberty interest with respect to the terms or conditions of confinement or how the use of the regulation creates an atypical and significant hardship with regard to those terms or conditions of confinement. Notwithstanding, there is "no due process right to have [a] substance retested by an outside laboratory[.]" *Batista v. Goord*, 2005 WL 2179420, at *10 and

---

[5] The Court has not been provided with a copy of the hearing transcript or the procedures followed for the urinalysis. Thus, the Court will presume for this Motion that the procedures set forth in N.Y. COMP. CODES R. & REGS. tit. 7, § 1020.4(e)(1)(iv) were followed. Aiding in this presumption is a case from the New York Supreme Court, Appellate Division, Third Department, *Mathie v. Selsky*, where the court reviewed a disciplinary hearing involving urinalysis testing in which it was noted that there were positive results in two urine tests. 755 N.Y.S.2d 340, 341 (N.Y. App. Div. 3d Dep't 2003) (challenging in part the preparation of a defense because the printouts of the calibrations tests of the urinalysis were denied to plaintiff and the test found the presence of opiates). This case is referenced in Plaintiff's Amended Complaint in regards to his Superintendent's Hearing and urinalysis test. Am. Compl. at ¶ 19. Therefore, it is surmisable that two tests were performed pursuant to N.Y. COMP. CODES R. & REGS. tit. 7, § 1020.4(e)(1)(iv) in the current case based on *Mathie v. Selsky*.

n.69 (N.D.N.Y. Aug. 28, 2005) (citing *Peranzo v. Coughlin*, 850 F.2d 125, 126 (2d Cir. 1998) for the proposition that the use of urinalysis test results "may be relied upon as sufficient evidence in prison disciplinary hearings"[6] & *Spence v. Farrier*, 807 F.2d 753, 755-57 (8th Cir. 1986) (stating that when the urinalysis has been tested and retested, "a plaintiff ha[s] no due process right to 'a confirmatory test by alternate methodology));[7] *see also Rivera v. Wohlrab*, 232 F. Supp. 2d 117, 122-24 (S.D.N.Y. 2002). Therefore, even accepting all of Mathie's factual allegations as true per the motion to dismiss standard, Plaintiff cannot sustain a due process challenge for independent examinations of urine tested by DOCS.

Additionally, in Plaintiff's Response to the Motion, Plaintiff seems to now state that he is not challenging the ability to have an independent urinalysis test, but instead asserts that he is challenging the procedures used during a Superintendent's Hearing by which he was denied the "right to call witnesses and submit scientific documentary evidence . . . in his defense to allegations that [he] used illegal drugs or narcotics." Dkt. No. 24, Pl.'s Mem. of Law at pp. 1-2. However, even liberally construing Plaintiff's Amended Complaint, no where does Plaintiff set forth facts concerning the calling of witness in a Superintendent's Hearing and furthermore, Plaintiff does not even provide a date of the Superintendent's Hearing in question, or the penalties imposed. *See* Am. Compl. at ¶¶ 11-36; *supra* n. 5. Plaintiff, in his Amended Complaint, makes the claim that an "inmate is unconstitutionally prohibited from obtaining an independent [urinalysis] test result[,]" thus, the DOCS regulation proscribing the procedures for urinalysis testing violates the Due Process

---

[6] In addition, N.Y. COMP. CODES R. & REGS. tit. 7, § 1010.5 states in part that "[i]n a subsequent disciplinary hearing, the positive result of a test of suspected contraband drugs may be used as evidence that the suspected substance is what the test result indicates."

[7] The Court notes that pursuant to *Mathie v. Selsky*, Plaintiff's urine sample was tested twice. 755 N.Y.S.2d 341; *see supra* n. 5.

and Equal Protection Clauses. Am. Compl. at ¶¶ 14 & 19. As Plaintiff's Amended Complaint seems to discuss the regulation in terms of all inmates, including himself, this is distinct from contesting the validity of the procedures used in Plaintiff's own Superintendent's Hearing. Plaintiff cannot challenge *his* Superintendent's Hearing at this time as he has not set forth any facts in his Amended Complaint regarding this issue.

The Court notes that opposition papers are not the proper vehicle to instill new causes of action. *See In re Private Capital Partners, Inc.*, 139 B.R. 120, 124-25 (Bankr. S.D.N.Y. 1992) (citing cases for the proposition that a plaintiff's attempt to amend his complaint by instituting new causes of action in his opposition papers to defendants' dispositive motion is in direct contravention of and amounted to an attempt to circumvent the Federal Rules of Civil Procedure, namely Rule 15(a)). If Plaintiff wishes to supplement or amend his Amended Complaint, he must follow the proper procedural mechanisms set forth in the Federal Rules of Civil Procedure and the Local Rules of Practice for the Northern District of New York. This Court will not construe Plaintiff's submission as a motion to amend.

In any event, even if Plaintiff were to amend his Amended Complaint to dispute his Superintendent's Hearing, Plaintiff must show a liberty interest with respect to the terms or conditions of confinement and an atypical and significant hardship with regard to those terms or conditions of confinement. Plaintiff makes reference to a liberty interest created through the loss of good time credits in order to challenge his right to due process in the disciplinary hearing where he tested positive for opiates. Pl.'s Mem. of Law at p. 6, Ex. F, Disciplinary History (referencing his urine sample testing positive for opiates as well as referring to his disciplinary history and stating "[i]n the instant case, a guilty finding of using narcotics in a prison results in a loss of good time

credits").[8] This reference to loss of good time credits in regards to the Hearing is also made in Plaintiff's Amended Complaint. Compl. at ¶ 26. However, assuming the loss of good-time credit was six months, *see* n. 8, the Court need not assess whether there was an atypical and significant hardship as Plaintiff's claim would be barred regardless.

> In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that to
>
> recover damages for an allegedly unconstitutional conviction or imprisonment, or for any other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid . . ., or called into question by a federal court's issuance of a writ of habeas corpus . . . .

*Heck,* at 486-87.

Thus, a court must consider if a judgment in favor of a plaintiff "would necessarily imply the validity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. If there is no implication, then the action should proceed. *Id.* In *Edwards v. Balisok*, 520 U.S. 641, 648 (1997), the Supreme Court extended *Heck* by holding that a prisoner who files a § 1983 action challenging discipline procedures resulting in loss of good-time credits must show that the conviction has been overturned.

Since Plaintiff references a loss of good-time credits in his Hearing, the Court must examine whether Plaintiff can challenge his Hearing at this time. As noted previously, in *Mathie v. Selsky*, Plaintiff sought to contest a urinalysis test in which opiates were found, the same as in the present case. 755 N.Y.S.2d at 341 (finding opiates present through a urinalysis test); Pl.'s Mem. of Law at

---

[8] Although Plaintiff cites to his disciplinary record to show a loss of good-time credit, the Court can only assume he is referring to a hearing of April 7, 2001, as Plaintiff did not provide the Court will a date of the hearing, when he was charged with drug use and a recommendation was made for six (6) months loss of good-time credit. Pl.'s Mem. of Law at p. 6, Ex. F, Disciplinary History. This would make sense in reference to his challenge of the disciplinary hearing in *Mathie v. Selsky*, a decision which was rendered in 2003.

p. 6 (discussing Plaintiff's positive urine sample test for opiates). As the two cases are clearly related, *Mathie v. Selsky* challenged the results of the disciplinary proceeding through an Article 78 proceeding. *Mathie v. Selsky*, 755 N.Y.S.2d 340.[9] The court upheld the determination of the Commissioner of Correctional Services regarding the Superintendent's Hearing and Plaintiff's petition was dismissed. Therefore, the Hearing presumably at issue was neither reversed, expunged, nor declared invalid. Plaintiff does not provide any evidence that there was a reversal through a *habeas corpus* petition. Thus, absent a reversal order, Mathie's procedural challenges on his Hearing would necessarily implicate the invalidity of the sentence through the recommendation for loss of his good-time credits and his due process claims on the Hearing would be barred.

Accordingly, it is recommended that the Motion to Dismiss be **granted** on the due process claim.

**2.  Equal Protection Claim**

Plaintiff generally alleges that DOCS directive 4937 violates his equal protection rights because he is unable to "obtain[] an independent test result" of the urinalysis test performed. Am. Comp. at ¶¶ 13, 14, 16, & 19.

The Equal Protection Clause of the Fourteenth Amendment states no "State [shall] deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. It further "directs that all persons similarly circumstanced shall be treated alike." *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (citation omitted).

---

[9] The prior history in *Mathie v. Selsky* states that the case is a "[p]roceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of the Commissioner of Correctional Services which found petitioner guilty of violating a prison disciplinary rule." 755 N.Y.S.2d 340.

The Second Circuit has held that in order for a prisoner to state a violation of the Equal Protection Clause, the prisoner "must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (citation omitted). An Equal Protection claim may be brought "by a 'class of one' where a plaintiff alleges that []he has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *African Trade & Info. Ctr., Inc. v. Abromaitis*, 294 F.3d 355, 362-63 (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

Here, Plaintiff claims that there is a violation of the Equal Protection Clause in that he is unable to conduct independent testing of urine. However, Plaintiff's claim fails to state a cause of action. Mathie does not claim that he was treated differently than other inmates who were subjected to the urinalysis test and had disciplinary hearings that utilized the results of the urinalysis tests conducted solely by DOCS. Neither does Plaintiff allege that he was personally treated differently as a result of intentional or purposeful discrimination. In fact, it appears that by his own admission, Plaintiff asserts that the policy is applied to all inmates in his situation.

Therefore, it is recommended that the Motion to Dismiss be **granted** on the equal protection claim.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Motion to Dismiss (Dkt. No. 17) be **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and

Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   August 23, 2006
        Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge